UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LYNNE MILLION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO. 3:06-CV-0746 CAN |
| | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On November 1, 2006, Plaintiff Lynne Million (Million), proceeding *pro se*, filed her complaint in this Court. On March 2, 2007, Million filed an opening brief, in which she asks this Court to enter judgment in her favor or to remand this matter to the Commissioner. On April 16, 2007, Defendant Social Security Administration (SSA) filed its response brief. On April 27, 2007, Million filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On July 21, 2003, Million filed her application for Disability Insurance Benefits (Tr 13). Million claims she is entitled to benefits pursuant to Titles II and XVI of the Social Security Act. See 42 U.S.C. §§ 416(i), 423. On March 31, 2005, Million appeared at a hearing *pro se* before an Administrative Law Judge (ALJ) (Tr. 242). The ALJ informed Million of her ability to have representation by counsel at her hearing, but she chose to represent herself instead (Tr. 242-44). Due to a lack of evidence in the case, the ALJ indicated he would attempt to request records on

Million's behalf (Tr. 254). The ALJ indicated that they would have a second hearing after he requested the relevant documents (Tr. 256).

On July 14, 2005, Million appeared *pro se* at a second hearing before the ALJ (Tr. 242). The ALJ addressed Million's reported medical conditions (Id.). The ALJ found that Million did not have any severe impairments or combination thereof except headaches (Tr. 15). The ALJ found that Million had the residual functional capacity (RFC) to perform the full range of medium work (Tr. 16).[1] Although Million did not appear to have any transferable skills because she lacked past relevant work, the ALJ found that her RFC allowed her to perform significant number of jobs within the national economy in accordance with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2 (the "Grids") (Tr. 18). Therefore, the ALJ found that Million was not disabled (Tr. 18).

Million appealed the ALJ's decision to the Appeals Council (Tr. 4-7). The Appeals Council denied Million's request for review on September 29, 2006, and as a result, the ALJ's decision became the Commissioner's final decision (Id.). 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, Million filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.     ANALYSIS**

  A.     Facts

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds, and someone that can do medium work can also do sedentary and light work. 20 C.F.R. § 40431567(c).

At the time of the ALJ's decision, Million was 48 years old with a general equivalency degree and she had completed her bachelor's degree from a local state university (Tr. 16-18). Her past employment experiences were very limited and episodic at best (Tr. 64). Million alleges that she has both physical and psychological limitations. Specifically, Million alleges that she suffers from borderline personality disorder, problems interacting with others, suicidal thoughts, and poor family history. (Tr. 15, 63). Additionally, she alleges a number of physical problems, such as headaches (Tr. 15-17). Million's insured status expired on March 31, 1984. There is much evidence in the record regarding Million's alleged impairments, but only those records prior to the 1984 onset date are relevant, for which there are very few records.

      1.      <u>Madison Center</u>

Million first received treatment from the Madison Center for psychological treatment in 1974 when she was 16 (Tr. 472). She had two intake interviews with her family and five treatment interviews (<u>Id</u>.). The goal of the therapy was to develop communication within Million's family (<u>Id</u>.). In Million's first treatment, she appeared obstinate, and she was dealing with difficult family issues (<u>Id</u>.). By the end of the therapy, the symptoms that appeared in Million's "acting out" had decreased, and the case was closed with the presenting problem being improved (Tr. 473). No medical or psychological diagnosis was listed (Tr. 472-73).

In 1978, Million went to one state court ordered treatment session at the Madison Center with her husband (Tr. 471). Million had no treatment plan because either Million, her husband, or both, indicated that things were going better for them and that they needed no further help (<u>Id</u>.). Again, no formal diagnosis was given (<u>Id</u>.).

       2.       Dr. Baran

Around March 31, 1982, Million saw Dr. Charles Baran, M.D., (Dr. Baran) (Tr. 465). Dr. Baran indicated that Million's CT scan and neurological workup were negative (Id.). However, Dr. Baran indicated that Million was suffering from painful headaches (Id.). Dr. Baran suggested several treatment courses, but he did indicate if her pain limited her functioning in any way (Id.).

       3.       Consulting Physicians

Million saw at least two consulting physicians at the request of the SSA (Tr. 211-226). The consulting physicians opined that there was not enough evidence to determine whether Million had a severe impairment (Tr. 16, 17).

There are several issues that this Court must resolve: 1) whether the ALJ received a valid waiver of counsel from Million, 2) whether the ALJ properly developed the record, 3) whether the ALJ properly found several of Million's disabilities to be not severe, 4) whether the ALJ properly assessed Million's credibility, 5) and whether the ALJ properly used the "Grids."

    B.    Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). Yet, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).

While a reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, it will not simply rubber stamp the ALJ's decision without carefully reviewing the presented evidence. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Ultimately, the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. Also any of the ALJ's legal conclusions are reviewed *de novo*. Id.

  C. Million's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Million must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the

Commissioner acknowledges the impairment. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

   1.  Ineffective Waiver

However, if the claimant does not receive adequate notice of his right to representation, the burden of proof on steps one through four shifts to the Commissioner.  See Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994); Hodes v.Apfel, 61 F. Supp. 2d 798, 811 (N.D. Ill. 1999). Claimants have a statutory right to counsel at disability hearings.  See 42 U.S.C. § 406.  A claimant may waive this right if the ALJ explains to the *pro se* claimant: 1) the manner in which an attorney can aid in the proceedings, 2) the possibility of free counsel or a contingency arrangement, and 3) the limitation of attorney fees to twenty five percent of past due benefits and required court approval of the fees.  Binion, 13 F.3d at 245; Thompson v. Sullivan, 933 F.2d 581, 585 (7th Cir. 1991).  If the ALJ fails to explain all three elements, the waiver is invalid, and the burden shifts to the SSA to prove that the ALJ adequately developed the record.  Id.

In the present case, the ALJ failed to obtain a valid waiver.  At the hearing, the ALJ asked Million whether she was certain she did not wish to have an attorney (Tr. 242-43).  The discussion, though, was completely void of the topic regarding the possibility of free counsel, a contingency arrangement, or the limitations to twenty five percent and court approval for fees (Id.).  Also, the ALJ did not explain the manner in which an attorney can aid in the proceedings

(Id.). As a result, the ALJ's failure to discuss all three of the Binion requirements renders Million's waiver of counsel invalid. See Binion, 13 F.3d at 245 ("[B]ecause the ALJ did not comply with the clear dictates of Thompson, . . . waiver was invalid."); Hodes, 61 F. Supp. 2d at 810-11.

### 2.     Development of the Record

When, as here, the claimant's waiver of representation is invalid, the ALJ has a heightened duty to develop the record. Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007); Young v. Apfel, 1999 WL 325026 at 8 (N.D. Ind. 1999). The ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." Binion, 13 F.3d at 245. A significant omission is usually required before this Court will find that the ALJ failed to assist the *pro se* claimant in developing the record fully and fairly. Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994). If the SSA establishes that the ALJ fully and fairly developed the record, the claimant can rebut the showing by demonstrating prejudice or an evidentiary gap. Binion, 13 F.3d at 245; Hodes, 61 F. Supp. 2d at 811.

In the present case, the SSA has met its burden. The SSA details that the ALJ discussed in length with Million about what medical records were needed and the difficulty in obtaining them (Tr. 254). Further, the ALJ granted another hearing to permit Million and the Commissioner time to collect more of the records, which proved generally unsuccessful (Tr. 255-56). The ALJ acknowledged these difficulties in his opinion, and Million admitted the potential trouble in securing these records both at her hearing and in her briefs to the Court (Tr. 17, 264). The ALJ inquired into Million's disabilities, the extent of her problems and how they

affected her, and why she received treatment (Tr. 267, 272-75).  The SSA has established that the ALJ fully and fairly developed the record.

Million argues that she suffered prejudice because the ALJ failed to obtain the records of one of her physicians, Dr. Sirloin.  At the hearing Million insisted that she saw Dr. Sirloin as a child, that she had attempted to obtain his records and failed, and that she was not sure whether his records would provide any evidence of disability or not.  There is no indication in the record of whether the ALJ attempted to obtain the records of Dr. Sirloin or not.  Therefore, this Court can only assume the ALJ did not attempt to obtain the records of Dr. Sirloin.

However, the ALJ's failure to obtain the records of Dr. Sirloin did not prejudice Million.  The ALJ's failure to obtain the records of Dr. Sirloin was not a significant omission.  There was virtually no evidence before the ALJ that supported Million's claims of psychiatric or physical problems. The only evidence before the ALJ were some records regarding psychiatric treatment with the Madison Center and a statement of treatment by Dr. Baran.  None of the records indicated that Million suffered from a disabling condition.  Even Dr. Baran's findings regarding Million's pain did not indicate that Million's pain affected her ability to work or function.  Million herself could not articulate how Dr. Sirloin's records would establish that she was disabled let alone if they were related to the other records before the ALJ.  While the ALJ did not obtain Dr. Sirloin's records, nor make an attempt to obtain them, it is not reversible error where, as here, the ALJ had no reason to expect any additional evidence would change the result.  See Bolden v. Chater, 1997 WL 639050 at 8 (N.D. Ill. 1997).

Furthermore, the record reveals that the ALJ could not practically find the records of Dr. Sirloin.  Even though the ALJ had a duty to develop the record, Million still had the duty to

8

bring to the ALJ's attention everything that shows she is disabled.[2]  See Luna v. Shalala, 22 F.3d 687, 693 (7th Cir. 1994).  Million provided the name of Dr. Sirloin to the ALJ, but that was it.  Million did not provide the ALJ with Dr. Sirloin's address, or the address of a hospital at which he worked.  Million did not even know if Dr. Sirloin had any records or where they might exist (Tr. 67).  Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.  Nelson v. Apfel, 131 F.3d 1228 (7th Cir. 1998).  In this case the ALJ had a duty to establish and develop the evidentiary record, even by obtaining the claimant's medical records.  But, he is not required to undertake an archeological expedition for records that theoretically might exist somewhere.

In summary, the ALJ properly and fairly developed the record.  The ALJ's failure to obtain the records of Dr. Sirloin was not prejudicial to Million.  The ALJ's failure to obtain a valid waiver of the *pro se* claimant was harmless.

> 3.  The ALJ's determination that Million did not have any severe mental or physical impairments was supported by substantial evidence

A physical or mental impairment must be established by medical evidence through signs, symptoms, and laboratory findings.  20 C.F.R. § 404.1508.  The statements of the claimant alone are insufficient.  Id.  A severe impairment is one which significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1521; Taylor v. Schweiker, 739 F.2d 1240, 1242 (7th Cir. 1984).  Basic work activities are the abilities needed to

---

[2]Million also claims the ALJ failed to obtain the records of a Dr. Paul Macri.  However, there is no indication in the record that Million ever mentioned Dr. Macri prior to the ALJ's decision.  Million, at the very least and even though she was proceeding *pro se*, had the duty to mention that Dr. Macri may have helpful records in response to the ALJ's repeated inquiries into Million's treatment.

9

do most jobs such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, seeing, hearing, speaking, understanding, remembering simple instructions, use of judgment, responding appropriately to supervision and co-workers, and dealing with changes in a routine work setting.  See 20 C.F.R § 404.1521(b); Bunch v. Heckler, 778 F.2d 396, 401 (7th Cir. 1985); Taylor, 739 F.2d at 1243.

Million argues that the ALJ improperly failed to consider a variety of her physical and mental ailments that she claims were disabling.  The ALJ found that there was no medical evidence to support a conclusion that Million had any severe impairments other than headaches.  At most, the ALJ found Million was mildly affected in her ability to perform daily activities, maintain social functioning, and sustain concentration, persistence, or pace.  The ALJ reached this conclusion because Million did not seek regular or consistent treatment and because there was no medical opinion in the record to suggest otherwise.

The record supports the ALJ's conclusion.  Million only sought medical treatment from the Madison Center twice.  In both instances, Million's treatment was limited and sporadic (Tr. 470-73).  The record is devoid of any other evidence of impairments.  There simply is no evidence in the record of signs, symptoms, or laboratory findings to suggest Million had a severe mental or physical impairment let alone whether Million was significantly limited in her ability to function.  "It is not enough for the plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity."  Lopez v. Sec. of Health & Human Serv.s, 798 F.Supp. 1351, 1355 (N.D. Ind. 1991).  Furthermore, the only medical opinions in the record support the ALJ's decision, even though they are sparse opinions from consulting physicians (Tr. 211-224).  Simply put, there is

10

no evidence in the record to suggest to this Court that the ALJ's analysis and conclusion was unreasonable.

Million tries to point to an abundance of evidence after March 31, 1984, to establish that she had severe problems, mental or otherwise. The ALJ found that Million's insured status expired on March 31, 1984 (Tr. 15, 19, 45, 81). To be entitled to Disability Insurance Benefits, Million had to prove that she was disabled at any point prior to her last insured date. See 42 U.S.C. § 423(a), (c); Stevenson v. Chater, 105 F.3d 1151, 1154 (7th Cir. 1997); Meredith v. Bowen, 833 F.2d 650, 652 n.1 (7th Cir. 1987). Consequently, all of the evidence Million points to after 1984 as proof that she suffered from some kind of disability, mental or physical, is simply not pertinent to the ALJ's analysis.

In summary, there is no evidence in the record to suggest that the ALJ's finding that Million did not have a severe impairment, other than headaches, is not reasonable. Also, there is no evidence of a diagnosis of an impairment or even signs, symptoms, or laboratory findings of such an impairment. While there is evidence that Million received treatment, that evidence does not establish any kind of significantly limiting impairment. Simply put, the ALJ's findings was reasonable.

        4.    <u>The ALJ's finding that Million was not entirely credible was supported by substantial evidence</u>

Next, it appears that Million argues the ALJ failed to assess her credibility when he made his RFC finding. Specifically, that the ALJ failed to consider the pain caused by her headaches or the disabling effects of those headaches.

11

The ALJ recognized that there was evidence in the record that supported Million's claims that her headaches caused her pain and that they were severe.  If an ALJ finds that an allegation of pain is not supported by the objective medical evidence in the record, and if the claimant still indicates that pain is a significant factor of his or her alleged disability, then the ALJ must obtain a detailed description of the claimant's daily activities by directing specific inquires about the pain and its effects to the claimant.  Zurawski, 245 F.3d at 887.  If the ALJ finds that the objective medical evidence does not support a claimant's allegations that pain is disabling, as the ALJ did in this case, the ALJ determines whether the claimant is credible.  Social Security ruling 96-7p, as well as 7th Circuit case law, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being not credible.  Schmidt v. Barnhart, 395 F.3d 737, 746 (7th Cir. 2005).  The regulations and SSR 96-7p outline several factors an ALJ should consider.  See C.F.R. § 404.1529(c)(3). However, nothing in SSR 96-7p or 7th Circuit case law require an ALJ to elaborate on all of these factors.  Blom v. Barnhart, 363 F.Supp. 2d 1041, 1055 (E.D. Wis. 2005).

The ALJ satisfied his burden in this case.  The ALJ did not merely state that Million's claims were not consistent with the objective medical evidence.  Also, the ALJ did not equate Million's daily activities with a finding of not credible, which Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004) cautions is error. Instead, the ALJ recited several reasons to support his finding.  The ALJ indicated that the Million had a normal neurological examination and CT scan.  The ALJ also pointed to the fact that Million did not frequently receive treatment for her pain.  The ALJ stated that there was no evidence in the record to corroborate Million's claims that her pain was disabling.  The ALJ pointed out that there was no indication that Million was

12

limited to less than a medium residual functional capacity, and that there was no medical opinion that corroborated Million's claims during the relevant period.  The ALJ's explanation was sufficient and reasonable.

          5.      <u>The ALJ's use of the Grid was supported by substantial evidence</u>

The ALJ used the Grid at step five to find that Million could perform other work that existed in the economy.  If a claimant's age, education, work experience, and RFC coincide exactly with the corresponding factors of the Grid, the regulations direct a finding of disabled or not disabled.  <u>See</u> 20 C.F.R. § 404.1569.  The determination of whether the Grid should be used is a question of fact, and its use will be upheld so long as substantial evidence supports its application.  <u>See</u> <u>Willaims v. Chater</u>, 1996 WL 153884 at 11 (N.D. Ill. 1996).  Use of the Grid is inappropriate, as a matter of law, if a claimant's non-exertional impairments or other total limiting effects, such as pain, are so severe as to limit the range of work the claimant can perform.  <u>Haddon</u>, 818 F. Supp. At 1149.  However, if pain is not found to interfere with a claimant's capacity to perform the range of work he is otherwise capable of doing, the Grid may be used.  <u>See</u> <u>Kapusta v. Sullivan</u>, 900 F.2d 94, 96 (7th Cir. 1990); <u>Stewart v. Shalala</u>, 1995 WL 549029 at 3 (N.D. Ill. 1995).  This Court has already found that the ALJ's evaluation of Million's pain and that it only limited her to medium work was supported by substantial evidence.  Therefore, the ALJ's use of the Grid was proper.  <u>See</u> <u>Smith v. Schweiker</u>, 735 F.2d 267, 272 n. 2 (7th Cir. 1984) ("Where the evidence supports it, an ALJ is permitted to conclude that a non-exertional limitation, while present, has no significant impact.")  Million again points to evidence from after the relevant date in 1984, which this Court reiterates is not relevant to the ALJ's analysis.  Simply put, the ALJ's use of the Grid was proper

### III.    CONCLUSION

For the reasons stated, the ALJ's findings were supported by substantial evidence. Therefore, Million's motion for remand or judgment in her favor is **DENIED** [Doc. No. 18]. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four (4) of 42 U.S.C. § 405(g).  The clerk is instructed to term the case and enter judgment in favor of the SSA.

**SO ORDERED.**

Dated this 31st Day of July, 2007.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
